## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNETICUT

| | | |
|---|---|---|
| ACE AMERICAN INSURANCE COMPANY, | : | |
| NATIONAL UNION FIRE INSURANCE COMPANY, | : | Civil Action No. |
| ARCH INSURANCE COMPANY, CERTAIN | : | 3:11-cv-01136-SRU |
| UNDERWRITERS AT LLOYD'S SUBSCRIBING TO | : | |
| POLICY NOS. NED436WA3634, 60098A08AA, | : | |
| PN00177AA001 and AGP076002AA08, GREAT | : | |
| LAKES REINSURANCE (UK) PLC, GENERAL | : | |
| SECURITY INDEMNITY COMPANY OF ARIZONA, | : | |
| and INTERNATIONAL INSURANCE COMPANY | : | |
| OF HANNOVER LTD., AS SUBROGEES OF | : | |
| KLEEN ENERGY SYSTEMS, LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| KEYSTONE CONSTRUCTION AND | : | |
| MAINTENANCE SERVICES, INC., BLUEWATER | : | |
| ENERGY SOLUTIONS, INC., WORLEYPARSONS | : | |
| GROUP, INC., SPRAGUE ENERGY CORP., | : | |
| ALGONQUIN GAS TRANSMISSION, LLC, | : | |
| SIEMENS ENERGY INC., f/k/a/ | : | |
| SIEMENS POWER GENERATION, INC., | : | |
| SIEMENS AG AND SPECTRA ENERGY, INC. | : | |
| | : | |
| Defendants. | : | JULY 29, 2011 |

## FIRST AMENDED COMPLAINT

## PARTIES

1.     Plaintiff ACE American Insurance Company is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

2.     Plaintiff National Union Fire Insurance Company is a Pennsylvania corporation with its principal place of business in New York, New York.

3.     Plaintiff Arch Insurance Company is a Missouri corporation with its principal place of business in New York, New York.

4.     Plaintiffs Certain Underwriters at Lloyd's Subscribing to Policy Nos. NED436WA3634, 60098A08AA, PN00177AA001, and AGP076002AA08 ("Lloyd's"), are foreign organizations and underwriters of insurance policies.  Lloyd's is comprised of a group of syndicates acting by and through their appointed active underwriters and with a principal place of business located at 1 Lime Street, London, England EC3M 7HA.

5.     Plaintiff Great Lakes Reinsurance (UK) PLC is a foreign corporation with its principal place of business in London, England.

6.     Plaintiff General Security Indemnity Company of Arizona is an Arizona corporation with its principal place of business in New York, New York.

7.     Plaintiff International Insurance Company of Hannover Ltd., is an insurance company registered in England with a principal place of business located at 1 Arlington Square, Bracknell, England RG12 1WA.

8.     Collectively, the aforementioned insurance companies are referred to in this Complaint as "the Plaintiff insurers."

9.     Defendant Keystone Construction and Maintenance Services, Inc. ("Keystone") is a Massachusetts corporation with its principal place of business in Massachusetts which conducts business in the State of Connecticut.

10.     Defendant Bluewater Energy Solutions, Inc. ("Bluewater") is a Georgia corporation with its principal place of business in Georgia which conducts business in the State of Connecticut.

11.     Defendant WorleyParsons Group, Inc. ("WorleyParsons") is a Delaware corporation with its principal place of business in Texas which conducts business in the State of Connecticut.

12.     Defendant Sprague Energy Corp. ("Sprague") is a Delaware corporation with its principal place of business in New Hampshire which conducts business in the State of Connecticut.

13.     Defendant Algonquin Gas Transmission, LLC ("Algonquin") is a Delaware corporation with its principal place of business in Texas which conducts business in the State of Connecticut.

14.     Defendant Siemens Energy Inc., f/k/a/ Siemens Power Generation, Inc. ("Siemens") is a Maryland corporation with its principal place of business in Florida which conducts business in the State of Connecticut.

15.     Defendant Siemens AG is a corporation organized and existing under the laws of Germany at Wittelsbacherplatz 2 80333 Munich, Germany.   Siemens AG may be served pursuant to Rules 4(e) thru (h) of the Federal Rules of Civil Procedure and Articles 2, 3, 5 and 10 of the Hague Convention on Service Abroad.

16.     Defendant Spectra Energy ("Spectra") is a Delaware corporation with its principal place of business in Houston, Texas which conducts business in the State of Connecticut.

## JURISDICTION

17.     Jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

18.     The amount in controversy exceeds $75,000.00.

## FACTUAL ALLEGATIONS

19.     At all times herein relevant, Kleen Energy Systems, LLC ("Kleen") contracted for the delivery of a turnkey power plant in Middletown, Connecticut.   The Plaintiff Insurers provided Kleen with builders risk property insurance against loss and damage to the power plant pursuant to the terms and conditions of their respective policies.

3

20.     Kleen contracted with O&G Industries, Inc. to design, construct and deliver the turnkey power plant.  O&G in turn subcontracted work out to various subcontractors including the Defendants Keystone, Bluewater, WorleyParsons and Siemens.

21.     Kleen purchased natural gas from the Defendant Sprague.

22.     Kleen contracted with Algonquin to transport Sprague's natural gas to the power plant.

23.     Large volumes of natural gas under high pressure were utilized at the power plant to blow debris from gas piping; a process known as gas blows.

24.     On February 7, 2010, a gas blow was underway at the Kleen Power Plant venting into a confined area of the power plant allowing gas to accumulate and ignite, causing a massive explosion resulting in deaths, injuries, and millions of dollars of property damage.

25.     At all times material hereto, the Plaintiff Insurers had in full force and effect insurance policies insuring Kleen Energy Systems, LLC against loss and damage to the power plant under construction in Middletown, Connecticut.

26.      As a result of the explosion and resulting damage, Kleen asserted claims against the Plaintiff Insurers for property damage and delays related to the explosion and the Plaintiff Insurers pursuant to the respective policies have paid Kleen pursuant to the terms of their policies and will be obligated to make additional payments in the future.  As a result of the said payments, the Plaintiff Insurers have become legally, equitably and contractually subrogated to Kleen's rights against the Defendants and other parties who may bear responsibility for the February 7, 2010 explosion to the extent of the payments made by Plaintiffs.

## COUNT ONE:  NEGLIGENCE
## PLAINTIFFS V. WORLEYPARSONS

27.   Plaintiffs incorporate by reference Paragraphs 1-26 the same as if they were set forth at length.

28.   Defendant WorleyParsons provided engineering services for the construction of the power plant including the design of the main gas fuel supply line, end supply piping to the turbines, instrumentation for gas piping and accepted Siemens "System Requirements" for gas blows.

29.   Defendant WorleyParsons, through its agents, servants and employees, was under a duty of care to perform its engineering work consistent with the applicable standard of care. Defendant WorleyParsons breached those duties as follows:

      a.    In designing and engineering the main gas fuel supply line and end supply piping so that it could not be properly cleaned or purged with natural gas to meet the turbine manufactures specifications, thereby creating an extremely dangerous condition;

      b.    In accepting the "System Requirements" authored by Siemens, for gas blows which specified the use of natural gas as opposed to other inert gas options as set forth in the proposed gas piping commissioning procedures;

      c.    In accepting Siemens "System Requirements" for gas blows when it knew or should have known that it did not contain sufficient technical guidance regarding safe methods for the cleaning of gas piping and the managed release of expelled natural gas;

      d.    In failing to warn and recommend against using natural gas to clean its gas piping;

      e.    In failing to ensure that the design and implementation of the gas blow process was performed in the safest manner possible;

      f.    In failing to recommend that the gas blow process be discontinued when it knew or should have known that the temporary gas blow piping was configured in a manner which would cause excessive and dangerous amounts of natural gas to accumulate at or near ground level;

g.   In failing to provide proper supervision relating to the design and implementation of the gas blow process;

h.   In failing to specify upper limits on gas pressure used during the gas blow process;

i.   In failing to design and engineer the gas piping with a venting system connected to the temporary gas blow down piping which would have allowed the natural gas to disburse safely into the atmosphere; and

j.   In failing to recommend an evaluation of the optimal meteorological conditions of the property before gas blows were conducted.

30.   The acts and omissions described herein were proximate causes of the explosion at the Kleen Energy facility on February 7, 2010 and the resulting damage.

## COUNT TWO:  STRICT LIABILITY
## PLAINTIFFS V. WORLEYPARSONS

31.   Plaintiffs incorporate by reference Paragraphs 1-30 the same as if they were set forth at length.

32.   Gas blows utilizing natural gas at the Kleen Power Plant constituted an ultra hazardous activity for the following reasons:

a.   It is well known that there is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas.

b.   Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) had resulted in deaths, injuries and substantial property damage.

c.   The likelihood of harm and damage caused by exploding natural gas is common knowledge.

d.   The elimination of the risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can be self-ignited by static electricity or by expelled metal debris sparking against nearby structures.

6

e.    There are commonly used methods to clean gas piping other than natural gas including "pigging", air, nitrogen, chemical/water and steam.

f.    The use of natural gas at the Kleen Energy plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas.

g.    The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community. Property beyond the confines of the Kleen Energy site was damaged by the explosion of February 7, 2010 hereinafter described.

33.    The engineering and design work performed by the Defendant WorleyParsons included, but was not limited to approval of Siemens "System Requirements" for gas blows at the power plant which involved an ultra hazardous activity so that it is strictly liable for the damages caused by the explosion of February 7, 2010.

## COUNT THREE: NEGLIGENCE
## PLAINTIFFS V. SIEMENS

34.    Plaintiffs incorporate by reference Paragraphs 1-33 the same as if they were set forth at length.

35.    Defendant Siemens provided engineering services and equipment including turbines for the power plant and provided its "System Requirements" for gas blows.

36.    Defendant Siemens, through its agents, servants and employees was under a duty of care to perform its engineering work consistent with the applicable standard of care. Defendant Siemens breached those duties as follows:

a.    Failing to prohibit or recommend that natural gas not be used to clean gas piping serving its equipment;

b.    In providing "System Requirements" for gas blows which were inadequate in terms of safety;

7

c.      Failing to recommend the use of pipe cleaning agents other than natural gas;

d.      Failing to provide proper technical guidance for safe methods for the cleaning of gas piping;

e.      Failing to provide both upper and lower limits for comprehensive cleaning force ratio guidelines resulting in the use of excessive amounts of natural gas during the gas blow process;

f.      Failing to ensure that the design and implementation of the gas blow procedure was performed in a reasonable and safe manner;

g.      Failing to recommend that the gas blow process be stopped when it knew or should have known that the temporary gas blow piping was configured in a manner which would cause excessive and dangerous amounts of gas to accumulate at or near ground level and away from the building;

h.      Failing to specify upper limits on gas pressure used during the gas blow process;

i.      Failing to provide proper supervision relating to the design and implementation of the gas blow process;

j.      Failing to consider temperature and wind conditions during the gas blow process; and

k.      Providing its "System Requirements" for gas blows when it knew or should have known that it did not contain sufficient technical guidance regarding safe methods for the cleaning of gas piping and the managed release of expelled natural gas.

37.    The acts and omissions described herein were proximate causes of the explosion at the Kleen Energy facility on February 7, 2010 and the resulting damage.

## COUNT FOUR:  STRICT LIABILITY
## PLAINTIFFS V. SIEMENS

38.    Plaintiffs incorporate by reference Paragraphs 1-37 the same as if they were set forth at length.

39.    Gas blows utilizing natural gas at the Kleen Power Plant constituted an ultra hazardous activity for the following reasons:

a.     It is well known that there is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas.

b.     Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) had resulted in deaths, injuries and substantial property damage.

c.     The likelihood of harm and damage caused by exploding natural gas is common knowledge.

d.     The elimination of the risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can be self-ignited by static electricity or by expelled metal debris sparking against nearby structures.

e.     There are commonly used methods to clean gas piping other than natural gas including "pigging", air, nitrogen, chemical/water and steam.

f.     The use of natural gas at the Kleen Energy plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas.

g.     The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community.  Property beyond the confines of the Kleen Energy site was damaged by the explosion of February 7, 2010 hereinafter described.

40.     The engineering and design work performed by the Defendant Siemens included but was not limited to the furnishing of "System Requirements" for gas blows at the power plant which involved an ultra hazardous activity so that it is strictly liable for the damages caused by the explosion of February 7, 2010.

## COUNT FIVE:  NEGLIGENCE
## PLAINTIFFS V. SIEMENS AG

41.     Plaintiffs incorporate by reference Paragraphs 1-40 the same as if they were set forth at length.

42.     Defendant Siemens provided engineering services and equipment including turbines for the power plant and provided its "System Requirements" for gas blows.

43.     Defendant Siemens, through its agents, servants and employees was under a duty of care to perform its engineering work consistent with the applicable standard of care. Defendant Siemens breached those duties as follows:

a.     Failing to prohibit or recommend that natural gas not be used to clean gas piping serving its equipment;

b.     In providing "System Requirements" for gas blows which were inadequate in terms of safety;

c.     Failing to recommend the use of pipe cleaning agents other than natural gas;

d.     Failing to provide proper technical guidance for safe methods for the cleaning of gas piping;

e.     Failing to provide both upper and lower limits for comprehensive cleaning force ratio guidelines resulting in the use of excessive amounts of natural gas during the gas blow process;

f.     Failing to ensure that the design and implementation of the gas blow procedure was performed in a reasonable and safe manner;

g.     Failing to recommend that the gas blow process be stopped when it knew or should have known that the temporary gas blow piping was configured in a manner which would cause excessive and dangerous amounts of gas to accumulate at or near ground level and away from the building;

h.     Failing to specify upper limits on gas pressure used during the gas blow process;

i.     Failing to provide proper supervision relating to the design and implementation of the gas blow process;

j.     Failing to consider temperature and wind conditions during the gas blow process; and

k.     Providing its "System Requirements" for gas blows when it knew or should have known that it did not contain sufficient technical guidance

regarding safe methods for the cleaning of gas piping and the managed release of expelled natural gas.

44.     The acts and omissions described herein were proximate causes of the explosion at the Kleen Energy facility on February 7, 2010 and the resulting damage.

## COUNT SIX:  STRICT LIABILITY
## PLAINTIFFS V. SIEMENS AG

45.     Plaintiffs incorporate by reference Paragraphs 1-44 the same as if they were set forth at length.

46.     Gas blows utilizing natural gas at the Kleen Power Plant constituted an ultra hazardous activity for the following reasons:

a.     It is well known that there is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas.

b.     Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) had resulted in deaths, injuries and substantial property damage.

c.     The likelihood of harm and damage caused by exploding natural gas is common knowledge.

d.     The elimination of the risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can be self-ignited by static electricity or by expelled metal debris sparking against nearby structures.

e.     There are commonly used methods to clean gas piping other than natural gas including "pigging", air, nitrogen, chemical/water and steam.

f.     The use of natural gas at the Kleen Energy plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas.

     g.     The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community. Property beyond the confines of the Kleen Energy site was damaged by the explosion of February 7, 2010 hereinafter described.

47.     The engineering and design work performed by the Defendant Siemens included but was not limited to the furnishing of "System Requirements" for gas blows at the power plant which involved an ultra hazardous activity so that it is strictly liable for the damages caused by the explosion of February 7, 2010.

## COUNT SEVEN: NEGLIGENCE
## PLAINTIFFS V. BLUEWATER

48.     Plaintiffs incorporate by reference Paragraphs 1-47 the same as if they were set forth at length.

49.     Defendant Bluewater, through its agents, servants and employees, was responsible for, among other things, the engineering and design of the temporary gas lines used in connection with the gas blow process, the design and engineering of the gas blow process and the implementation of the gas blow process, including safety procedures. Defendant Bluewater was under a high duty of care to perform its engineering work consistent with the applicable standard of care. Defendant Bluewater breached those duties as follows:

     a.     In failing to develop adequate safety procedures for conducting the gas blow cleaning of the gas piping;

     b.     In failing to design temporary piping that would safely direct natural gas used to clean the gas piping into the atmosphere;

     c.     In failing to take precautions to ensure that its gas pipe commissioning procedures including the elimination of ignition sources and prohibition of work including welding in areas where the gas blows were being conducted were implemented;

     d.     Permitting the use of dangerously excessive amounts of natural gas under high pressure to be used during the gas blow process;

e.      In permitting the use of natural gas containing excessive amounts of propane to be used during the gas blow process;

f.      Using natural gas to clean the gas piping when it knew or should have known that the procedure was inherently dangerous;

g.      In failing to properly supervise Keystone during the gas blow process;

h.      In permitting inexperienced persons at Keystone to participate in the design of the temporary piping system used in connection with the gas blow process;

i.      In designing the temporary piping used during the gas blow process in a manner which allowed for dangerously excessive amounts of natural gas to accumulate at or near ground level;

j.      In failing to take measures that would have prevented natural gas used in connection with the gas blow process to accumulate and explode;

k.      In failing to ensure that a Joint Safety Analysis was prepared with procedures which would have prevented the ignition of natural gas during the gas blow process on February 7, 2010;

l.      In discharging its employee because he attempted to develop safer procedures for implementing the gas blow process;

m.      In permitting an unqualified contractor to participate in the design and fabrication of the temporary gas blow down piping;

n.      In permitting gas blows to proceed when it was obvious that the temporary gas blow piping was improperly and dangerously configured; and

o.      In failing to evaluate the meterological conditions of the property and their influence on site activities.

50.     The acts and omissions described herein were proximate causes of the explosion at the Kleen Energy facility on February 7, 2010 and the resulting damage.

## COUNT EIGHT:  STRICT LIABILITY
## PLAINTIFFS V. BLUEWATER

51.     Plaintiffs incorporate by reference Paragraphs 1-50 the same as if they were set forth at length.

52.     Gas blows utilizing natural gas at the Kleen Power Plant constituted an ultra hazardous activity for the following reasons:

a.      It is well known that there is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas.

b.      Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) had resulted in deaths, injuries and substantial property damage.

c.      The likelihood of harm and damage caused by exploding natural gas is common knowledge.

d.      The elimination of the risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can be self-ignited by static electricity or by expelled metal debris sparking against nearby structures.

e.      There are commonly used methods to clean gas piping other than natural gas including "pigging", air, nitrogen, chemical/water and steam.

f.      The use of natural gas at the Kleen Energy plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas.

g.      The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community.  Property beyond the confines of the Kleen Energy site was damaged by the explosion of February 7, 2010 hereinafter described.

53.     The engineering, design and commissioning work performed by the Defendant Bluewater relating to the gas blow process at the Kleen Power Plant involved an ultra hazardous activity so that it is strictly liable for the damages caused by the explosion of February 7, 2010.

## COUNT NINE: – NEGLIGENCE
## PLAINTIFFS V. KEYSTONE

54.     Plaintiffs incorporate by reference Paragraphs 1-53 the same as if they were set forth at length.

55.     Defendant Keystone, through its agents, servants and employees, was responsible for, among other things, the engineering and design of the gas blow temporary piping, participated in the development of safety procedures for the gas blow process and the implementation of the gas blow process.  The Defendant Keystone was under a high duty of care to perform its engineering/design and commissioning were consistent with the applicable standard of care.  The Defendant breached those duties as follows:

      a.      In assuming the responsibility for engineering/designing and configuring the temporary gas blow piping system when it was unqualified to perform the design and configuring work;

      b.      In failing to engineer/design the temporary gas blow piping so that it would safely direct natural gas used to clean the gas piping into the atmosphere;

      c.      In failing to develop adequate safety procedures for conducting the gas blow cleaning of the gas piping;

      d.      In permitting the use of dangerously excessive amounts of natural gas to be used during the gas blow process;

      e.      In permitting inexperienced employees to participate in the engineer/design of the temporary gas blow piping system used in connection with the gas blow process;

      f.      In engineering/designing the temporary gas blow system in a manner which caused dangerously excessive amounts of natural gas to accumulate at or near ground level;

      g.      In failing to recognize or take measures which would have prevented natural gas used in connection with the gas blow process to accumulate and explode;

     h.     In failing to prepare a Joint Safety Analysis with procedures which would have prevented the ignition of natural gas during the gas blow process;

     i.     In conducting the gas blow on February 7, 2010, when it was obvious that dangerous amounts of natural gas had accumulated in the areas where the gas blow was being conducted;

     j.     In failing to eliminate all sources of ignition in the area where the gas blows were being conducted on February 7, 2010;

     k.     In failing to properly monitor the levels of natural gas in the area where the gas blows were being conducted;

     l.     In ordering that welding and other construction activities continue at the Plant despite the fact that they could serve to ignite natural gas in areas where the gas blows were being conducted and excessive amounts of natural gas had accumulated;

     m.     In proceeding to conduct the gas blows under extremely dangerous conditions in order to receive financial rewards to finish the work before or on schedule; and

     n.     In proceeding with the CT1 gas blow without obtaining permission from Bluewater.

56.     The acts and omissions described herein were proximate causes of the explosion at the Kleen Energy facility on February 7, 2010 and the resulting damage.

### COUNT TEN:  STRICT LIABILITY
### PLAINTIFFS V. KEYSTONE

57.     Plaintiffs incorporate by reference Paragraphs 1-56 the same as if they were set forth at length.

58.     Gas blows utilizing natural gas at the Kleen Power Plant constituted an ultra hazardous activity for the following reasons:

     a.     It is well known that there is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas.

b.      Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) had resulted in deaths, injuries and substantial property damage.

c.      The likelihood of harm and damage caused by exploding natural gas is common knowledge.

d.      The elimination of the risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can be self-ignited by static electricity or by expelled metal debris sparking against nearby structures.

e.      There are commonly used methods to clean gas piping other than natural gas including "pigging", air, nitrogen, chemical/water and steam.

f.      The use of natural gas at the Kleen Energy plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas.

g.      The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community.  Property beyond the confines of the Kleen Energy site was damaged by the explosion of February 7, 2010 hereinafter described.

59.      The engineering, design and commissioning work performed by the Defendant Keystone related to the gas blow process at the Kleen Power Plant involved an ultra hazardous activity as herein set forth so that it is strictly liable for the damages caused by the explosion of February 7, 2010.

## COUNT ELEVEN:  PRODUCTS LIABILITY
## PLAINTIFFS V. SPRAGUE

60.      Plaintiffs incorporate by reference Paragraphs 1-59 the same as if they were set forth at length.

61.      Defendant Sprague was the seller of the natural gas used for the gas blows.

62.     The gas which is the subject of the suit was not altered in any way by Kleen from the condition in which it was supplied by Defendant Sprague.

63.     Defendant Sprague, through its agents, servants and employees is liable and legally responsible to the Plaintiffs for the property damage by virtue of Connecticut General Statutes Section 52-572(m) et. seq. in one or more of the following respects:

        a.      In selling Kleen natural gas for a purpose which it knew or should have known was inherently dangerous;

        a.      In failing to warn Kleen that the use of natural gas for the purpose of performing gas blows was inherently dangerous and likely to result in damage to Kleen's property;

        b.      In failing to warn Kleen of various precautions which needed to be taken to reduce the hazards of using natural gas for gas blows;

        c.      In failing to warn Kleen that minimal volumes of natural gas and pressures should be used when natural gas was used as a gas pipe cleaning agent; and

        d.      In providing natural gas for the gas blows at excessive volumes and pressures resulting in the accumulation of extremely hazardous volumes of gas.

64.     As a direct result of Defendant Sprague's liability pursuant to Connecticut General Statutes Section 52-272(m), the explosion and property damage of February 7, 2010 occurred.

## COUNT TWELVE:  NEGLIGENT MISREPRESENTATION
## PLAINTIFFS V. SPRAGUE

65.     Plaintiffs incorporate by reference Paragraphs 1-64 the same as if they were set forth at length.

66.     Sprague, through its agents, servants and employees, negligently misrepresented that the use of its natural gas for the gas blows at Kleen's facility could be performed in a safe manner which would not cause damage to Kleen's property.

67.     Based on this misrepresentation, Kleen was induced to enter into the purchase of natural gas from Sprague for the purpose of gas blows.

68.     If Sprague had disclosed to Kleen that natural gas for gas blows was inherently dangerous, Kleen would not have entered into the contract with Sprague thereby preventing the explosion of February 7, 2010 and the resulting damage.

69.     As a result of the reliance on Sprague's misrepresentation, damages were suffered by Kleen and its insurers.

<u>**COUNT THIRTEEN: – NEGLIGENCE**</u>
<u>**PLAINTIFFS V. ALGONQUIN**</u>

70.     Plaintiffs incorporate by reference Paragraphs 1-69 the same as if they were set forth at length.

71.     Defendant Algonquin entered into a Service Agreement with Kleen to transport natural gas to Kleen through Algonquin's "Kleen Energy Lateral" and meter station including natural gas to be used for gas blows.  Defendant had a duty not to permit its equipment including its metering station to be used for purposes which would endanger life or Kleen's property and to warn Kleen that use of natural gas for gas blows was inherently dangerous and likely to result in damage to its property.  Algonquin negligently breached its duties to Kleen as follows:

a.      In using its gas piping and metering station to transport natural gas to Kleen for a purpose which it knew or should have known was inherently dangerous;

b.      In failing to warn Kleen that use of natural gas which it transported to Kleen for the purpose of performing gas blows was inherently dangerous and likely to result in damage to Kleen's property;

c.      In failing to warn Kleen that the natural gas that it transported to Kleen could contain excessive amounts of propane which might increase the likelihood of explosive accumulations of natural gas at or near ground level;

    d.      In failing to warn Kleen of various precautions which needed to be taken to reduce the hazards of using natural gas for gas blows;

    e.      In failing to warn Kleen that minimal volumes of natural gas and pressure should be used when natural gas is used as a pipe cleaning agent; and

    f.      In transporting natural gas to Kleen for the purpose of gas blows, with excessive volumes and pressures resulting in extremely hazardous volumes of natural gas to accumulate and explode.

72.    The acts and omissions described herein were proximate causes of the explosion at the Kleen Energy facility on February 7, 2010 and the resulting damage.

## COUNT FOURTEEN:  NEGLIGENT MISREPRESENTATION
## PLAINTIFFS V. ALGONQUIN

73.    Plaintiffs incorporate by reference Paragraphs 1-72 the same as if they were set forth at length.

74.    Algonquin, through its agents, servants and employees negligently represented that the use of natural gas for gas blows at Kleen's facility could be performed in a safe manner which would not cause damage to Kleen's property.

75.    Based on this misrepresentation, Kleen was induced to enter into agreements for the transportation of natural gas to Kleen's facility for the purpose of gas blows.

76.    If Algonquin had disclosed to Kleen that the use of natural gas for gas blows was inherently dangerous, Kleen would not have entered into the contracts with Algonquin for the transport of natural gas through to its plant, thereby preventing the explosion of February 7, 2010 and the resulting damage.

77.    As a result of the reliance on Algonquin's misrepresentation, damages were suffered by Kleen and its insurers.

## COUNT FIFTEEN:  STRICT LIABILITY
## PLAINTIFFS V. ALGONQUIN

78.     Plaintiffs incorporate by reference Paragraphs 1-77 the same as if they were set forth at length.

79.     Gas blows utilizing natural gas at the Kleen Power Plant constituted an ultra hazardous activity for the following reasons:

a.     It is well known that there is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas.

b.     Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) had resulted in deaths, injuries and substantial property damage.

c.     The likelihood of harm and damage caused by exploding natural gas is common knowledge.

d.     The elimination of the risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can be self-ignited by static electricity or by expelled metal debris sparking against nearby structures.

e.     There are commonly used methods to clean gas piping other than natural gas including "pigging", air, nitrogen, chemical/water and steam.

f.     The use of natural gas at the Kleen Energy plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas.

g.     The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community.  Property beyond the confines of the Kleen Energy site was damaged by the explosion of February 7, 2010 hereinafter described.

80.     The transportation of natural gas by Algonquin to Kleen for the purpose of gas blows constituted an ultra hazardous activity so that Algonquin is strictly liable for the damages caused by the explosion of February 7, 2010.

### COUNT SIXTEEN: – NEGLIGENCE
### PLAINTIFFS V. SPECTRA

81.     Plaintiffs incorporate by reference Paragraphs 1-80 the same as if they were set forth at length.

82.     Defendant Algonquin entered into a Service Agreement with Kleen to transport natural gas to Kleen through Algonquin's "Kleen Energy Lateral" and meter station including natural gas to be used for gas blows.  Defendant had a duty not to permit its equipment including its metering station to be used for purposes which would endanger life or Kleen's property and to warn Kleen that use of natural gas for gas blows was inherently dangerous and likely to result in damage to its property.  Algonquin negligently breached its duties to Kleen as follows:

  a. In using its gas piping and metering station to transport natural gas to Kleen for a purpose which it knew or should have known was inherently dangerous;

  b. In failing to warn Kleen that use of natural gas which it transported to Kleen for the purpose of performing gas blows was inherently dangerous and likely to result in damage to Kleen's property;

  g. In failing to warn Kleen that the natural gas that it transported to Kleen could contain excessive amounts of propane which might increase the likelihood of explosive accumulations of natural gas at or near ground level;

  h. In failing to warn Kleen of various precautions which needed to be taken to reduce the hazards of using natural gas for gas blows;

  i. In failing to warn Kleen that minimal volumes of natural gas and pressure should be used when natural gas is used as a pipe cleaning agent; and

j.     In transporting natural gas to Kleen for the purpose of gas blows, with excessive volumes and pressures resulting in extremely hazardous volumes of natural gas to accumulate and explode.

83.     The acts and omissions described herein were proximate causes of the explosion at the Kleen Energy facility on February 7, 2010 and the resulting damage.

## COUNT SEVENTEEN:  NEGLIGENT MISREPRESENTATION
## PLAINTIFFS V. SPECTRA

84.     Plaintiffs incorporate by reference Paragraphs 1-83 the same as if they were set forth at length.

85.     Algonquin, through its agents, servants and employees negligently represented that the use of natural gas for gas blows at Kleen's facility could be performed in a safe manner which would not cause damage to Kleen's property.

86.     Based on this misrepresentation, Kleen was induced to enter into agreements for the transportation of natural gas to Kleen's facility for the purpose of gas blows.

87.     If Algonquin had disclosed to Kleen that the use of natural gas for gas blows was inherently dangerous, Kleen would not have entered into the contracts with Algonquin for the transport of natural gas through to its plant, thereby preventing the explosion of February 7, 2010 and the resulting damage.

88.     As a result of the reliance on Algonquin's misrepresentation, damages were suffered by Kleen and its insurers.

## COUNT EIGHTEEN:  STRICT LIABILITY
## PLAINTIFFS V. SPECTRA

89.     Plaintiffs incorporate by reference Paragraphs 1-88 the same as if they were set forth at length.

90.     Gas blows utilizing natural gas at the Kleen Power Plant constituted an ultra hazardous activity for the following reasons:

a.      It is well known that there is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas.

b.      Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) had resulted in deaths, injuries and substantial property damage.

c.      The likelihood of harm and damage caused by exploding natural gas is common knowledge.

d.      The elimination of the risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can be self-ignited by static electricity or by expelled metal debris sparking against nearby structures.

e.      There are commonly used methods to clean gas piping other than natural gas including "pigging", air, nitrogen, chemical/water and steam.

f.      The use of natural gas at the Kleen Energy plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas.

g.      The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community. Property beyond the confines of the Kleen Energy site was damaged by the explosion of February 7, 2010 hereinafter described.

91.     The transportation of natural gas by Algonquin to Kleen for the purpose of gas blows constituted an ultra hazardous activity so that Algonquin is strictly liable for the damages caused by the explosion of February 7, 2010.

### COUNT NINETEEN: INTENTIONAL, WANTON
### AND RECKLESS CONDUCT
### PLAINTIFFS V. ALL DEFENDANTS

92.     Plaintiffs incorporate by reference Paragraphs 1-91 the same as if they were set forth at length.

93.     Defendants' acts and/or omissions described herein constituted intentional, wanton or reckless misconduct.

94.     The intentional wanton or reckless misconduct described herein by all of the Defendants was the proximate cause of the explosion at the Kleen Power Plant on February 7, 2010.

WHEREFORE, the Plaintiffs demand:

a)     Money damages;

b)     Costs;

c)     Punitive damages pursuant to Count Fourteen; and

d)     Such other relief as the Court deems appropriate.

Respectfully submitted,

THE PLAINTIFFS,

BY     /s/ Stuart G. Blackburn ct00686
       Stuart G. Blackburn, Esq.
       Law Offices of Stuart G. Blackburn
       Two Concorde Way
       PO Box 608
       Windsor Locks, CT 06096
       Tel. 860-292-1116
       Fax 860-292-1221
       sgblackburn@sbcglobal.net

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNETICUT

### CERTIFICATE OF SERVICE

| | | |
|---|---|---|
| ACE AMERICAN INSURANCE COMPANY, | : | |
| NATIONAL UNION FIRE INSURANCE COMPANY, | : | Civil Action No. |
| ARCH INSURANCE COMPANY, CERTAIN | : | 3:11-cv-01136-SRU |
| UNDERWRITERS AT LLOYD'S SUBSCRIBING TO | : | |
| POLICY NOS. NED436WA3634, 60098A08AA, | : | |
| PN00177AA001 and AGP076002AA08, GREAT | : | |
| LAKES REINSURANCE (UK) PLC, GENERAL | : | |
| SECURITY INDEMNITY COMPANY OF ARIZONA, | : | |
| and INTERNATIONAL INSURANCE COMPANY | : | |
| OF HANNOVER LTD., AS SUBROGEES OF | : | |
| KLEEN ENERGY SYSTEMS, LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| vs. | : | |
| | : | |
| KEYSTONE CONSTRUCTION AND | : | |
| MAINTENANCE SERVICES, INC., BLUEWATER | : | |
| ENERGY SOLUTIONS, INC., WORLEYPARSONS | : | |
| GROUP, INC., SPRAGUE ENERGY CORP., | : | |
| ALGONQUIN GAS TRANSMISSION, LLC, | : | |
| SIEMENS ENERGY INC., f/k/a/ | : | |
| SIEMENS POWER GENERATION, INC., | : | |
| SIEMENS AG AND SPECTRA ENERGY, INC. | : | |
| | : | |
| Defendants. | : | JULY 29, 2011 |

I hereby certify that on JULY 29, 2011, a copy of the foregoing **First Amended Complaint** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

BY: /s/ Stuart G. Blackburn, Esq. #ct00686
    Law Offices of Stuart G. Blackburn
    Two Concorde Way
    P.O. Box 608
    Windsor Locks, CT 06096
    Tel. (860) 292-1116
    Fax (860) 292-1221
    sgblackburn@sbcglobal.net