UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ACE AMERICAN INSURANCE COMPANY, | : | |
| NATIONAL UNION FIRE INSURANCE COMPANY, | : | Civil Action No. |
| ARCH INSURANCE COMPANY, CERTAIN | : | 3:11-cv-01136-SRU |
| UNDERWRITERS AT LLOYD'S SUBSCRIBING TO | : | |
| POLICY NOS. NED436WA3634, 60098A08AA, | : | |
| PN00177AA001 and AGP076002AA08, GREAT | : | |
| LAKES REINSURANCE (UK) PLC, GENERAL | : | |
| SECURITY INDEMNITY COMPANY OF ARIZONA, | : | |
| and INTERNATIONAL INSURANCE COMPANY | : | |
| OF HANNOVER LTD., AS SUBROGEES OF | : | |
| KLEEN ENERGY SYSTEMS, LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| KEYSTONE CONSTRUCTION AND | : | |
| MAINTENANCE SERVICES, INC., BLUEWATER | : | |
| ENERGY SOLUTIONS, INC., WORLEYPARSONS | : | |
| GROUP, INC., SPRAGUE ENERGY CORP., | : | |
| ALGONQUIN GAS TRANSMISSION, LLC, | : | |
| SIEMENS ENERGY INC., f/k/a/ | : | |
| SIEMENS POWER GENERATION, INC., | : | |
| SIEMENS AG AND SPECTRA ENERGY, INC. | : | |
| | : | DECEMBER 20, 2011 |
| Defendants. | : | |

**THIRD AMENDED COMPLAINT
AND RELIANCE UPON DEMAND FOR JURY TRIAL**

**PARTIES**

1.    Plaintiff ACE American Insurance Company is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

2.    Plaintiff National Union Fire Insurance Company is a Pennsylvania corporation with its principal place of business in New York, New York.

3.    Plaintiff Arch Insurance Company is a Missouri corporation with its principal place of business in New York, New York.

4.     Plaintiffs Certain Underwriters at Lloyd's Subscribing to Policy Nos. NED436WA3634, 60098A08AA, PN00177AA001, and AGP076002AA08 ("Lloyd's"), are foreign organizations and underwriters of insurance policies.  Lloyd's is comprised of a group of syndicates acting by and through their appointed active underwriters and with a principal place of business located at 1 Lime Street, London, England EC3M 7HA.

5.     Plaintiff Great Lakes Reinsurance (UK) PLC is a foreign corporation with its principal place of business in London, England.

6.     Plaintiff General Security Indemnity Company of Arizona is an Arizona corporation with its principal place of business in New York, New York.

7.     Plaintiff International Insurance Company of Hannover Ltd., is an insurance company registered in England with a principal place of business located at 1 Arlington Square, Bracknell, England RG12 1WA.

8.     Collectively, the aforementioned insurance companies are referred to in this Complaint as "the Plaintiff Insurers."

9.     Defendant Keystone Construction and Maintenance Services, Inc. ("Keystone") is a Massachusetts corporation with its principal place of business in Massachusetts which conducts business in the State of Connecticut.

10.     Defendant Bluewater Energy Solutions, Inc. ("Bluewater") is a Georgia corporation with its principal place of business in Georgia which conducts business in the State of Connecticut.

11.     Defendant WorleyParsons Group, Inc. ("WorleyParsons") is a Delaware corporation with its principal place of business in Texas which conducts business in the State of Connecticut.

12.     Defendant Sprague Energy Corp. ("Sprague") is a Delaware corporation with its principal place of business in New Hampshire which conducts business in the State of Connecticut.

13.     Defendant Algonquin Gas Transmission, LLC ("Algonquin") is a Delaware corporation with its principal place of business in Texas which conducts business in the State of Connecticut.

14.     Defendant Siemens Energy Inc., f/k/a/ Siemens Power Generation, Inc. ("Siemens") is a Maryland corporation with its principal place of business in Florida which conducts business in the State of Connecticut.

15.     Defendant Siemens AG is the parent corporation of Defendant Siemens and is organized and existing under the laws of Germany at Wittelsbacherplatz 2 80333 Munich, Germany.  Siemens AG may be served pursuant to Rules 4(e) thru (h) of the Federal Rules of Civil Procedure and Articles 2, 3, 5 and 10 of the Hague Convention on Service Abroad.

16.     Defendant Spectra Energy ("Spectra") is a Delaware corporation with its principal place of business in the State of Texas which conducts business in the State of Connecticut.

**JURISDICTION**

17.     Jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

18.     The amount in controversy exceeds $75,000.00.

**FACTUAL ALLEGATIONS**

19.     At all times herein relevant, Kleen Energy Systems, LLC ("Kleen") contracted for the delivery of a turnkey power plant in Middletown, Connecticut ("Kleen Plant").  The Plaintiff Insurers provided Kleen with builders risk property insurance against loss and damage to the power plant pursuant to the terms and conditions of their respective policies.

3

20.     Kleen contracted with O&G Industries, Inc. to design, construct and deliver the turnkey power plant.  O&G, in turn, subcontracted work to various subcontractors including Defendants Keystone, Bluewater, WorleyParsons and Siemens.

21.     Kleen purchased natural gas from Defendant Sprague for a process called gas blow, as described below.

22.     Kleen contracted with Defendant Algonquin to transport Defendant Sprague's natural gas to the Kleen Plant for gas blows as described below.

23.     On February 7, 2010, a natural gas explosion occurred at the Kleen Plant while it was still under construction resulting in deaths, injuries and property damage.

24.     The natural gas explosion occurred during a "gas blow", a process where natural gas is forced through fuel gas piping at high pressure and velocity to remove debris before the piping is used to deliver natural gas to gas turbines.  Cleaning of the gas pipe is mandated by the turbine manufacturer, Defendant Siemens Energy, Inc.

25.     During the gas blow, the natural gas is expelled, along with debris, through temporary gas piping into the atmosphere where the gas is intended to disperse.

26.     Gas blows are inherently dangerous because regardless of safety measures taken, the flammable natural gas can self-ignite due to static accumulation from the flow of gas or by expelled debris sparking against nearby objects.

27.     Kleen Energy of course knew that natural gas was flammable.  However, Kleen Energy was unaware of the highly dangerous nature of the gas blow process, including the fact that any attendant hazards could not be eliminated.  Kleen Energy relied upon the Defendants to exercise due care in providing products and services relating to the cleaning of fuel gas piping at the Kleen Plant.

28.     The Defendants were aware of the ultra hazardous nature of the gas blow process.

29.     On February 7, 2010, the temporary gas piping used to expel natural gas was not directed vertically up into the atmosphere.  Instead, the temporary pipe was almost horizontal, directing the expelled natural gas and debris into a confined area with numerous sources of ignition and workers engaged in, amongst other activities, welding.  Approximately 480,000 cubic feet of natural gas collected in the confined space and ignited resulting in a massive explosion causing deaths, injuries and property damage.

30.     The process undertaken for the gas blows at the Kleen Plant were ultra-hazardous for the reasons set forth in Paragraph 38a-38g and other identical paragraphs contained herein.

31.     Subsequent to the explosion at the Kleen Plant, the Governor of Connecticut issued Executive Order #45, banning power plants from using natural gas to conduct gas blows.

32.     NFPA (National Fire Protection Association) implemented a revised Standard, NFPA 56 (PS), Standard for Fire and Explosion Prevention During Charging and Purging of Flammable Gas Piping Systems, 2012 Edition as a result of the Kleen Plant explosion.  The Standard prohibits the use of flammable gas as a cleaning agent for cleaning the interior of piping systems.

33.     As a result of the explosion and resulting damage, Kleen asserted claims against the Plaintiff Insurers for property damage and delays related to the explosion and the Plaintiff Insurers pursuant to the respective policies, have paid Kleen approximately $200,000,000 and will be obligated to make additional payments in the future.  As a result of said payments, Plaintiff Insurers are legally, equitably and contractually subrogated to Kleen's rights against the Defendants and other parties who may bear responsibility for the February 7, 2010 explosion to the extent of the payments made by Plaintiff Insurers.

## COUNT ONE:  RECKLESS, WANTON AND/OR WILLFUL CONDUCT
## PLAINTIFFS V. KEYSTONE

34.     Plaintiffs incorporate by reference Paragraphs 1-33 the same as if they were set forth herein.

35.     Defendant Keystone, through its agents, servants and employees, was responsible for, among other things, the engineering and design of the gas blow temporary piping, participated in the development of safety procedures for the gas blow process and the implementation of the gas blow process.  Keystone was under a duty to exercise a high degree of care with respect to its involvement with the ultra-hazardous gas blow process.   Defendant Keystone recklessly, wantonly and/or willfully breached those duties as follows:

a.     In assuming the responsibility for engineering, designing and implementing the inherently dangerous gas blow process at the Kleen Plant when it knew that it did not possess the necessary experience or expertise to perform such work;

b.     In designing and implementing a gas blow process which on February 7, 2010 resulted in approximately 480,000 cubic feet of natural gas to be blown at very high pressure through temporary piping where it was expelled into a confined area where there were numerous sources of ignition resulting in a natural gas explosion causing death, injuries and property damage;

c.     In falsely representing that it possessed the experience and expertise to design and implement the gas blow process at the Kleen Plant resulting in a seriously flawed gas blow process where approximately 480,000 cubic feet of natural gas was blown at very high pressure through a horizontal pipe low to the ground where it was expelled into a confined area where there were numerous sources of ignition resulting in a natural gas explosion causing death, injuries and property damage;

d.     In ordering an employee with no expertise or experience to design the temporary gas piping for gas blows at the Kleen Plant resulting in an extremely flawed design causing an explosion of natural gas resulting in death, injuries and property damage;

e.     In designing and implementing a gas blow process for the Kleen Plant which lacked the most fundamentals of safety resulting in natural gas

being blown into a confined area where there were numerous sources of ignition resulting in an explosion of natural gas causing death, injuries and property damage;

f.      In failing to follow their own gas blow commissioning procedures.

g.      In permitting gas blows to proceed on February 7, 2010 when it was obvious that the location and configuration of the temporary gas piping which it designed would permit excessive amounts of natural gas to collect in a confined area where there were numerous sources of ignition resulting in the explosion of natural gas causing death, injuries and property damage;

h.      In failing to conduct a safety meeting prior to the gas blows on February 7, 2010 at the Kleen Plant or to produce a Joint Safety Analysis applicable to the February 7, 2010 gas blows;

i.      In failing to de-energize sources of ignition in areas where its design directed flammable natural gas to accumulate resulting in the ignition and explosion of flammable natural gas causing death, injuries and property damage;

j.      In ordering workers in the areas of the gas blows to continue their work including welding even though its gas detection equipment showed the collection of dangerous levels of flammable natural gas in that same area;

k.      In ordering employees who did not possess the necessary experience or expertise to monitor natural gas levels in the gas blow areas resulting in the ignition of natural gas on February 7, 2010 causing death, injuries and property damage;

l.      In placing financial awards connected with the early or timely completion of its work at the Kleen Plant, including gas blows ahead of implementing and following safety procedures which were necessary to reduce the likelihood of natural gas used for gas blows to ignite and explode;

m.      In recommending and/or selecting natural gas to clean gas piping at the Kleen Plant because it was faster than using other safer cleaning agents such as air because completing the work ahead of schedule would result in financial rewards for it notwithstanding that gas blows were inherently dangerous; and

n.      In proceeding with a final gas blow on February 7, 2010 without obtaining the permission of Bluewater resulting in an explosion of natural gas causing death, injuries and property damage.

36.     The reckless, wanton and/or willful acts and/or omissions described herein were proximate causes of the explosion at the Kleen Plant on February 7, 2010 and the resulting damage.

## COUNT TWO:  STRICT LIABILITY
## PLAINTIFFS V. KEYSTONE

37.     Plaintiffs incorporate by reference Paragraphs 1-36 the same as if they were set forth herein.

38.     Gas blows utilizing natural gas at the Kleen Plant constituted an ultra-hazardous activity for the following reasons:

a.      There is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas;

b.      Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) resulted in deaths, injuries and substantial property damage;

c.      The likelihood that death, serious personal injury, or significant property damage can result when natural gas is used for a gas blow is great (the instant incident being a prime example);

d.      The risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can self-ignite by static electricity by expelled metal debris sparking against nearby structures; or by other construction activities in the vicinity;

e.      There are commonly used (and far less dangerous) methods to clean gas piping other than natural gas, including "pigging", air, nitrogen, chemical/water and steam;

f.      The use of natural gas at the Kleen Plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas; and

g. The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community. Property beyond the confines of the Kleen Plant was damaged by the explosion of February 7, 2010.

39. The work performed by Defendant Keystone related to the gas blow process at the Kleen Plant involved an ultra-hazardous activity as set forth herein so that it is strictly liable for the damages caused by the explosion of February 7, 2010.

<u>**COUNT THREE:  RECKLESS, WANTON AND/OR WILLFUL CONDUCT PLAINTIFFS V. BLUEWATER**</u>

40. Plaintiffs incorporate by reference Paragraphs 1-39 the same as if they were set forth herein.

41. Defendant Bluewater, through its agents, servants and employees, was responsible for, among other things, the engineering and design of the temporary gas lines used in connection with the gas blow process, the design and engineering of the gas blow process and the implementation of the gas blow process, including safety procedures at the Kleen Plant. Bluewater was under a duty to exercise a high degree of care with respect to its involvement with the ultra-hazardous gas blow process.   Defendant Bluewater recklessly, wantonly and/or willfully breached those duties as follows:

a. In designing and implementing a gas blow process which on February 7, 2010 resulted in approximately 480,000 cubic feet of natural gas to be blown at very high pressure through a horizontal pipe into a confined area where there were numerous sources of ignition resulting in a natural gas explosion causing death, injuries and property damage;

b. In selecting and/or recommending gas blows to clean fuel gas piping at the Kleen Plant when it knew or should have known that it was an inherently dangerous process;

c. In designing and implementing a design blow process which permitted the existence of numerous ignition sources, including welding and workers in the area where flammable natural gas from gas blows had collected

resulting in a natural gas explosion causing death, injuries and property damage;

d.      In designing and implementing a gas blow process which permitted the use of excessive volumes of natural gas which collected and exploded causing death, injuries and property damage;

e.      In designing and implementing a gas blow process for the Kleen Plant which lacked the most fundamentals of safety resulting in excessive amounts of natural gas being blown into a confined area where there were numerous sources of ignition resulting in the explosion of natural gas causing death, injuries and property damage;

f.      In failing to follow their own gas blow commissioning procedures.

g.      In attempting to design and implement a gas blow process when it knew that it did not have the necessary expertise or experience with the inherently dangerous gas blow process resulting in excessive amounts of natural gas being expelled through a horizontal pipe into a confined area where there were numerous sources of ignition resulting in an explosion of natural gas causing death, injuries and property damage;

h.      In permitting gas blows to proceed on February 7, 2010 when it was obvious that the location and configuration of the temporary gas piping used in connection with the gas blow process would permit excessive amounts of natural gas to collect in a confined area where there were numerous sources of ignition resulting in the explosion of natural gas causing death, injuries and property damage;

i.      In failing to conduct a safety meeting prior to the gas blows on February 7, 2010 and/or produce a Joint Safety Analysis applicable to the February 7, 2010 gas blows resulting in excessive amounts of natural gas to collect in a confined area where there were numerous sources of ignition resulting in the explosion of natural gas causing death, injuries and property damage;

j.      In permitting a Keystone employee who it knew had no experience with gas blows to design and implement the configuration of temporary piping for the gas blow process at the Kleen Plant resulting in a temporary horizontal pipe low to the ground which blew excessive volumes of natural gas into a confined area where there were numerous sources of ignition resulting in an explosion causing death, injuries and property damage;

k.      In refusing to modify the configuration of the temporary gas piping which existed on February 7, 2010 after it was warned that the configuration was dangerous resulting in excessive amounts of flammable natural gas being

blown into a confined area where there were numerous sources of ignition, resulting in an explosion causing death, injuries and property damage;

l.   In discharging an employee because he attempted to develop safer procedures for implementing the gas blow process at the Kleen Plant resulting in a gas blow process which was seriously flawed and dangerous in terms of design and safety resulting in an excessive amount of flammable natural gas being blown through a temporary horizontal pipe low to the ground into a confined area where there were numerous sources of ignition resulting in an explosion of the natural gas causing death, injuries and property damage; and

m.   In recommending and/or selecting natural gas to clean piping at the Kleen Plant because it was faster than using other safer cleaning methods such as air and would result in financial rewards notwithstanding that gas blows were inherently dangerous.

42.   The reckless, wanton and/or willful acts and/or omissions described herein were proximate causes of the explosion at the Kleen Plant on February 7, 2010 and the resulting damage.

## COUNT FOUR:  STRICT LIABILITY
## PLAINTIFFS V. BLUEWATER

43.   Plaintiffs incorporate by reference Paragraphs 1-42 the same as if they were set forth herein.

44.   Gas blows utilizing natural gas at the Kleen Plant constituted an ultra-hazardous activity for the following reasons:

a.   There is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas;

b.   Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) resulted in deaths, injuries and substantial property damage;

c.   The likelihood that death, serious personal injury, or significant property damage can result when natural gas is used for a gas blow is great (the instant incident being a prime example);

     d.      The risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can self-ignite by static electricity by expelled metal debris sparking against nearby structures; or by other construction activities in the vicinity;

     e.      There are commonly used (and far less dangerous) methods to clean gas piping other than natural gas, including "pigging", air, nitrogen, chemical/water and steam;

     f.      The use of natural gas at the Kleen Plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas; and

     g.      The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community.  Property beyond the confines of the Kleen Plant site was damaged by the explosion of February 7, 2010.

45.    The work performed by Defendant Bluewater relating to the gas blow process at the Kleen Plant involved an ultra-hazardous activity as set forth herein so that it is strictly liable for the damages caused by the explosion of February 7, 2010.

<u>**COUNT FIVE:  RECKLESS, WANTON AND/OR WILLFUL CONDUCT
PLAINTIFFS V. WORLEYPARSONS**</u>

46.    Plaintiffs incorporate by reference Paragraphs 1-45 the same as if they were set forth herein.

47.    Defendant WorleyParsons provided engineering services for the construction of the power plant including the design of the main gas fuel supply line, end supply piping to the turbines, instrumentation for gas piping and accepted Siemens "System Requirements" for gas blows.

48.    In the contract between Kleen and Siemens for the purchase of turbines and other related equipment, Defendant WorleyParsons was designated as the "Engineer" and was to act

for and on behalf of Kleen Energy with regard to the administration of the contract with Siemens.

49.     Defendant WorleyParsons was under a duty to exercise a high degree of care with respect to its involvement with the ultra-hazardous gas blow process.  Defendant WorleyParsons recklessly, wantonly and/or willfully breached those duties as follows:

a.      In having "Reviewed And Accepted" Siemens "System Requirements" regarding "System Cleaning" which suggests that the use of natural gas, i.e. gas blows were an acceptable and safe method for cleaning fuel gas piping at the Kleen Plant when it knew or should have known that its acceptance of gas blows would influence other parties involved in the gas piping cleaning to engage in the inherently dangerous gas blow process;

b.      In accepting the use of gas blows to clean gas piping at the Kleen Plant when it knew that the inherently dangerous process of gas blows had been outlawed in other parts of the world where it conducts business;

c.      In having "Reviewed And Accepted" Siemens' suggestion in its "System Requirements" that gas blows were an acceptable and safe method for cleaning fuel gas piping when it knew or should have known that the largest turbine manufacturer in the United States recommended that non-explosive air or other methods be used to clean gas piping instead of natural gas;

d.      In having "Reviewed And Accepted" Siemens' "System Requirements" which required the gas piping cleaning contractor(s) to prepare a detailed procedure addressing system preparation, cleaning and restoration when it knew or should have known that the design and implementation of the gas blow process for the Kleen Plant was severely flawed resulting in approximately 480,000 cubic feet of natural gas blown at a very high pressure through a horizontal pipe into a confined area where there were numerous sources of ignition resulting in a natural gas explosion causing death, injury and property damage;

e.      In attending pre-gas blow meetings at the Kleen Plant but permitting and/or failing to object to pre-blow gas designs and implementation which were severely flawed resulting in 480,000 cubic feet of natural gas to be blown at very high pressure through a horizontal pipe into a confined area where there were numerous sources of ignition resulting in a natural gas explosion causing death, injury and property damage;

  f. In failing to include in its gas piping design a means of accommodating temporary piping for gas blows which would have reduced the hazards of explosion connected with gas blows at the Kleen Plant; and

  g. In failing to identify the inherently dangerous gas blow procedure as a "Key Issue," as that term is discussed in its Proposal Summary.

50. The reckless, wanton and/or willful acts and omissions described herein were proximate causes of the explosion at the Kleen Plant on February 7, 2010 and the resulting damage.

## COUNT SIX:  STRICT LIABILITY
## PLAINTIFFS V. WORLEYPARSONS

51. Plaintiffs incorporate by reference Paragraphs 1-50 the same as if they were set forth herein.

52. Gas blows utilizing natural gas at the Kleen Plant constituted an ultra-hazardous activity for the following reasons:

  a. There is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas;

  b. Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) resulted in deaths, injuries and substantial property damage;

  c. The likelihood that death, serious personal injury, or significant property damage can result when natural gas is used for a gas blow is great (the instant incident being a prime example);

  d. The risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can self-ignite by static electricity by expelled metal debris sparking against nearby structures; or by other construction activities in the vicinity;

  e. There are commonly used (and far less dangerous) methods to clean gas piping other than natural gas including "pigging", air, nitrogen, chemical/water and steam;

      f.      The use of natural gas at the Kleen Plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas; and

      g.      The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community.  Property beyond the confines of the Kleen Plant was damaged by the explosion of February 7, 2010.

53.      The work performed by Defendant WorleyParsons relating to the gas blow process at the Kleen Plant involved an ultra-hazardous activity as set forth herein so that it is strictly liable for the damages caused by the explosion of February 7, 2010.

## <u>COUNT SEVEN:  PRODUCTS LIABILITY</u><br><u>PLAINTIFFS V. SPRAGUE</u>

54.      Plaintiffs incorporate by reference Paragraphs 1-53 the same as if they were set forth herein.

55.      Defendant Sprague was the seller of the natural gas used for the gas blows. Furthermore, Defendant Sprague knew the gas it was selling to Kleen was to be used for a gas blow.

56.      The gas which is the subject of the suit was not altered in any way by Kleen from the condition in which it was supplied by Defendant Sprague.

57.      Defendant Sprague, through its agents, servants and employees is liable and legally responsible to Plaintiffs for the property damage by virtue of Connecticut General Statutes Section 52-572(m) et. seq. in one or more of the following respects:

      a.      In selling Kleen natural gas for a purpose which it knew or should have known was inherently dangerous;

      b.      In failing to warn Kleen that the use of natural gas for the purpose of performing gas blows was inherently dangerous and likely to result in damage to Kleen's property;

    c.      In failing to warn Kleen of various precautions which needed to be taken to reduce the hazards of using natural gas for gas blows;

    d.      In failing to warn Kleen that minimal volumes of natural gas and pressures should be used when natural gas was used as a gas pipe cleaning agent; and

    e.      In providing natural gas for the gas blows at excessive volumes and pressures resulting in the accumulation of extremely hazardous volumes of gas.

58.    As a direct result of Defendant Sprague's liability pursuant to Connecticut General Statutes Section 52-272(m), the explosion and property damage of February 7, 2010 at the Kleen Plant occurred.

## COUNT EIGHT:  RECKLESS, WANTON AND/OR WILLFUL CONDUCT PLAINTIFFS V. SPRAGUE

59.    Plaintiffs incorporate by reference Paragraphs 1-58 the same as if they were set forth herein.

60.    Sprague Energy, Inc. sold 5,000,000 cubic feet of natural gas to Kleen for the specific purpose of gas blows.

61.    Gas blows were an inherently dangerous use of Sprague's product, i.e. natural gas.

62.    The State of Connecticut now prohibits the use of natural gas to clean fuel gas piping.

63.    Sprague was under a duty to exercise a high degree of care with respect to its involvement with the ultra-hazardous gas blow process.  Defendant Sprague recklessly, wantonly and/or willfully breached those duties as follows:

    a.      In placing profit before safety by selling natural gas for gas blows when it knew that gas blows represented an inherently dangerous use of its product;

b.     In selling its product for gas blows when it knew that the pressure in pipes transporting its natural gas to Kleen Energy fluctuated which could and did result in grossly excessive volumes of its product being expelled during gas blows into a confined area creating a highly, flammable mixture which ignited and exploded causing death, injuries and property damage;

c.     In selling its product without any regard for safety when it knew that gas blows were inherently dangerous and likely to result in death, injuries and property damage;

d.     In selling its product for a use which it knew was inherently dangerous without providing Kleen Energy with any warnings whatsoever regarding the extreme hazards connected with the use of its product for gas blows;

e.     In selling its product for an inherently dangerous use without any investigation as to the design and implementation of the gas blow process at Kleen Energy to determine whether any precautions were being taken to reduce the extreme hazards connected with the use of its product;

f.     In selling its product to Kleen Energy without becoming involved in the pre-gas blow meetings when it knew that the use of its product for gas blows was inherently dangerous;

g.     In selling its product to Kleen Energy for gas blows which it knew represented an inherently dangerous use of its product without warning about using minimal amounts of gas and pressure for the gas blow process; and

h.     In selling 5,000,000 cubic feet of natural gas to Kleen Energy for gas blows when it knew or should have known that the amount sold was much more gas than was needed to conduct the gas blows at the Kleen Plant.

64.     The reckless, wanton and/or willful acts and/or omissions described herein were the proximate causes of the explosion at the Kleen Plant on February 7, 2010 and the resulting damage.

## COUNT NINE: – NEGLIGENCE
## PLAINTIFFS V. ALGONQUIN

65.     Plaintiffs incorporate by reference Paragraphs 1-64 the same as if they were set forth herein.

17

66.     Defendant Algonquin entered into a Service Agreement with Kleen to transport natural gas to Kleen through Algonquin's "Kleen Energy Lateral" and meter station which included the natural gas to be used for gas blows.  Furthermore, Defendant Algonquin knew the gas it was transporting to Kleen would be used for gas blows.

67.     Defendant had a duty not to permit its equipment including its metering station to be used for purposes which would endanger life or Kleen's property and to warn Kleen that use of natural gas for gas blows was inherently dangerous and likely to result in damage to its property.  Algonquin negligently breached its duties to Kleen as follows:

      a.     In using its gas piping and metering station to transport natural gas to Kleen for a purpose which it knew or should have known was inherently dangerous;

      b.     In failing to warn Kleen that use of natural gas which it transported to Kleen for the purpose of performing gas blows was inherently dangerous and likely to result in damage to Kleen's property;

      c.     In failing to warn Kleen of various precautions which needed to be taken to reduce the hazards of using natural gas for gas blows;

      d.     In failing to warn Kleen that minimal volumes of natural gas and pressure should be used when natural gas is used as a pipe cleaning agent; and

      e.     In transporting natural gas to Kleen for the purpose of gas blows, with excessive volumes and pressures resulting in extremely hazardous volumes of natural gas to accumulate and explode.

68.     The acts and/or omissions described herein were proximate causes of the explosion at the Kleen Plant on February 7, 2010 and the resulting damage.

## COUNT TEN:  RECKLESS, WANTON AND/OR WILLFUL CONDUCT PLAINTIFFS V. ALGONQUIN

69.     Plaintiffs incorporate by reference Paragraphs 1-68 the same as if they were set forth herein.

70.     Algonquin was under a duty to exercise a high degree of care with respect to its own direct involvement with the ultra-hazardous gas blow process. Defendant Algonquin recklessly, wantonly and/or willfully breached those duties as follows:

a.      In failing to offer or recommend the use of its own protocol for gas blows when it knew that the design and implementation of the gas blow process for the Kleen Plant was extremely flawed and likely to result in an ignition and explosion of the natural gas used during the gas blow process;

b.      In participating in developing a protocol for gas blows at the Kleen Plant which was severely flawed and expelled excessive volumes of natural gas into a confined area where several ignition sources were located resulting in an explosion causing death, injuries and property damage;

c.      In providing excessive amounts and pressures of natural gas for gas blows at the Kleen Plant to flow through its pipes and metering station when it knew that such volumes of natural gas were likely to collect, become ignited and explode causing death, injury and property damage;

d.      In ignoring the inexperience of other parties involved in the protocol, safety and implementation of the inherently dangerous gas blow process at the Kleen Plant knowing that the cleaning contractor's inexperience was likely to result in the ignition and explosion of the natural gas used during the gas blow process causing death, injury and property damage;

e.      In opening the valve at its metering station permitting natural gas to flow into the Kleen Plant for gas blows when it knew or should have known that the Kleen gas blow protocol and implementation was extremely flawed and likely to result in the ignition and explosion of natural gas causing death, injuries and property damage; and

f.      In permitting its piping system and metering house to transport natural gas to the Kleen Plant for gas blows which it knew or should have known was an inherently dangerous use of natural gas likely to result in death, injuries and property damage.

71.     The reckless, wanton and/or willful acts and/or omissions described herein were proximate causes of the explosion at the Kleen Plant on February 7, 2010 and the resulting damage.

## COUNT ELEVEN:  STRICT LIABILITY
## PLAINTIFFS V. ALGONQUIN

72.     Plaintiffs incorporate by reference Paragraphs 1-71 the same as if they were set forth herein.

73.     Gas blows utilizing natural gas at the Kleen Plant constituted an ultra-hazardous activity for the following reasons:

a.      There is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas;

b.      Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) had resulted in deaths, injuries and substantial property damage;

c.      The likelihood that death, serious personal injury, or significant property damage can result when natural gas is used for a gas blow is great (the instant incident being a prime example);

d.      The risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can self-ignite by static electricity by expelled metal debris sparking against nearby structures; or by other construction activities in the vicinity;

e.      There are commonly used (and far less dangerous) methods to clean gas piping other than natural gas, including "pigging", air, nitrogen, chemical/water and steam;

f.      The use of natural gas at the Kleen Plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas; and

g.      The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community.  Property beyond the confines of the Kleen Plant was damaged by the explosion of February 7, 2010.

74.     The work performed by Defendant Algonquin relating to the gas blow process at the Kleen Plant involved an ultra-hazardous activity as set forth herein so that it is strictly liable for the damages caused by the explosion of February 7, 2010.

## COUNT TWELVE:  RECKLESS, WANTON AND/OR WILLFUL CONDUCT
## PLAINTIFFS V. SIEMENS ENERGY

75.     Plaintiffs incorporate by reference Paragraphs 1-74 the same as if they were set forth herein.

76.     Defendant Siemens required in its "System Requirements" that the gas piping servicing its turbines be cleaned of all debris.  The gas pipes were being cleaned by blowing natural gas through the pipes at high pressure and velocity on February 7, 2010 when the natural gas exploded causing death, injuries and property damage.

77.     In its "System Requirements", Defendant Siemens indicated that natural gas was typically used to clean gas piping which, upon information and belief, was one of the principal reasons that natural gas, i.e., gas blows were conducted at the Kleen Plant.

78.     Defendant Siemens was under a duty to exercise a high degree of care with respect to its involvement with the ultra-hazardous gas blow process.  Defendant Siemens recklessly, wantonly and/or willfully breached those duties as follows:

    a.     In permitting the cleaning of gas pipes at the Kleen Plant with natural gas when it knew that such a process was inherently dangerous and likely to result in the ignition and explosion of the gas causing death, injuries and property damage;

    b.     In utilizing language prepared by its European parent in "System Requirements" which suggested that use of natural gas to clean gas piping was acceptable and safe when it knew its acceptance of the use of natural gas for gas blows would influence parties involved in the pipe cleaning to engage in the inherently dangerous gas blow process;

    c.     In utilizing language prepared by its European parent in its "System Requirements" which suggested that use of natural gas to clean gas piping

servicing its turbines was acceptable and safe when it knew or should have known that such a practice was banned in Europe;

d.     In suggesting in its "System Requirements" that the inherently dangerous practice of gas blows was acceptable and safe when it knew or should have known that the largest turbine manufacturer in the United States recommended that non-explosive air be used to clean the gas piping instead of natural gas;

e.     In failing in accordance with its "System Requirements" to ensure that the cleaning contractor(s) prepared an appropriate detailed procedure addressing system preparation, cleaning and restoration for the inherently dangerous gas blow process at the Kleen Plant when it knew or should have known that the cleaning contractor(s) design and implementation for the gas blow process at the Kleen Plant was flawed and likely to result in the natural gas igniting and exploding resulting in death, injury and property damage;

f.     In mandating cleaning of Kleen Energy's gas piping in its "System Requirements" but intentionally and recklessly failing to take any steps to ensure that the inherently dangerous gas blow process, design and implementation was performed by parties with the appropriate experience and expertise so that the design and implementation of the gas blow process at the Kleen Plant produced at least minimal precautions needed to reduce the possibility of the ignition and explosion of natural gas;

g.     In failing to specify in its "Systems Requirements" upper limits on gas pressure for gas blows at the Kleen Plant when it knew that excessive pressure could and did exhaust grossly excessive amounts of flammable natural gas into a confined space at the Kleen Plant where it ignited and exploded causing death, injuries and property damage; and

h.     In failing to take a lead role at pre-gas blow meetings to ensure that the gas piping cleaning which it mandated was performed in the safest manner possible due to the inherently dangerous nature of gas blows.

79.     The reckless, wanton and/or willful acts and/or omissions described herein were proximate causes of the explosion at the Kleen Plant on February 7, 2010 and the resulting damage.

## COUNT THIRTEEN:  STRICT LIABILITY
## PLAINTIFFS V. SIEMENS ENERGY

80.     Plaintiffs incorporate by reference Paragraphs 1-79 the same as if they were set forth herein.

81.     Gas blows utilizing natural gas at the Kleen Plant constituted an ultra-hazardous activity for the following reasons:

a.     There is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas;

b.     Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) resulted in deaths, injuries and substantial property damage;

c.     The likelihood that death, serious personal injury, or significant property damage can result when natural gas is used for a gas blow is great (the instant incident being a prime example);

d.     The risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can self-ignite by static electricity by expelled metal debris sparking against nearby structures; or by other construction activities in the vicinity;

e.     There are commonly used (and far less dangerous) methods to clean gas piping other than natural gas, including "pigging", air, nitrogen, chemical/water and steam;

f.     The use of natural gas at the Kleen Plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas; and

g.     The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community.  Property beyond the confines of the Kleen Plant was damaged by the explosion of February 7, 2010.

82.     The work performed by Defendant Siemens Energy relating to the gas blow process at the Kleen Plant involved an ultra-hazardous activity as set forth herein so that it is strictly liable for the damages caused by the explosion of February 7, 2010.

### COUNT FOURTEEN:  NEGLIGENCE
### PLAINTIFFS V. SIEMENS AG

83.     Plaintiffs incorporate by reference Paragraphs 1-82 the same as if they were set forth herein.

84.     Defendant Siemens AG provided "Systems Requirements" in connection with the turbines sold to Kleen Energy by Siemens Energy, Inc. which included, amongst other things cleaning instructions for the gas piping and a statement which implied that gas blows were an acceptable and safe manner to clean fuel gas piping.

85.     In its involvement with the ultra-hazardous gas blow process, Defendant Siemens AG was under a duty to exercise a high degree of care.  Siemens AG breached those duties and was negligent as follows:

a.     Failing to prohibit or recommend that natural gas not be used to clean gas piping serving Siemens turbines;

b.     By providing "System Requirements" for gas blows which were inadequate in terms of safety;

c.     Failing to recommend the use of pipe cleaning agents other than natural gas;

d.     Failing to provide proper technical guidance for safe methods for the cleaning of gas piping;

e.     Failing to provide both upper and lower limits for comprehensive cleaning force ratio guidelines resulting in the use of excessive amounts of natural gas during the gas blow process;

f.     Failing to ensure that the design and implementation of the gas blow procedure was performed in a reasonable and safe manner;

g.      Providing its "System Requirements" for gas blows when it knew or should have known that it did not contain sufficient technical guidance regarding safe methods for the cleaning of gas piping and the managed release of expelled natural gas.

86.     The negligence acts described herein were proximate causes of the explosion at the Kleen Plant on February 7, 2010 and the resulting damage.

## COUNT FIFTEEN:  RECKLESS, WANTON AND/OR WILLFUL CONDUCT PLAINTIFFS V. SIEMENS AG

87.     Plaintiffs incorporate by reference Paragraphs 1-86 the same as if they were set forth herein.

88.     Defendant Siemens AG provided "Systems Requirements" in connection with the turbines sold to Kleen Energy by Siemens Energy, Inc. which included, amongst other things, cleaning instructions for the gas piping and a statement which implied that gas blows were in an acceptable and safe manner to clean fuel gas piping.

89.     Defendant Siemens AG was under a duty to exercise a high degree of care with respect to its involvement by way of its "System Requirements" with the ultra-hazardous gas blow process.  Defendant Siemens AG recklessly, wantonly and/or willfully breached those duties as follows:

a.      In suggesting in Siemens "System Requirements" that use of natural gas to clean gas piping was acceptable and safe when it knew its suggestion that natural gas be used for gas blows would influence parties involved in the pipe cleaning at the Kleen Plant to engage in the inherently dangerous gas blow process;

b.      In suggesting in Siemens "System Requirements" that use of natural gas to clean gas piping servicing Siemens' turbines was acceptable and safe when it knew or should have known that gas blows were banned in Germany;

c.      In suggesting in Siemens' "System Requirements" that the inherently dangerous practice of gas blows was acceptable and safe when it knew or

should have known that the largest turbine manufacturer in the United States recommended that non-explosive air be used to clean gas piping instead of natural gas;

d.     In failing in accordance with its "System Requirements" to ensure through Siemens Energy, Inc. that the cleaning contractor(s) prepared an appropriate detailed procedure addressing system preparation, cleaning, and restoration for the inherently dangerous gas blow process at the Kleen Plant when it knew or should have known that the cleaning contractors design and implementation for the gas blow process at the Kleen Plant was seriously flawed and likely to result in natural gas igniting and exploding resulting in death, injury and property damage;

e.     In mandating cleaning of Kleen Energy's gas piping in its "System Requirements" but intentionally and recklessly failed to take any steps to ensure through Siemens Energy, Inc. that the inherently dangerous gas blow process, design and implementation was performed by parties with the appropriate experience and expertise so that the design and implementation of the gas blow process produced at least minimal precautions needed to reduce the possibility of natural gas igniting and exploding;

f.     In failing to specify in its "System Requirements" upper limits on gas pressure for gas blows at the Kleen Plant when it knew that excessive pressure could and did exhaust grossly excessive amounts of flammable natural gas into the atmosphere increasing the risk of the gas igniting and exploding; and

g.     In failing to instruct Siemens Energy, Inc. to take a lead role at pre-gas blow meetings to ensure that the gas piping cleaning which it mandated was performed in the safest manner possible due to the inherently dangerous nature of gas blows.

90.     The reckless, wanton and/or willful acts and/or omissions described herein were proximate causes of the explosion at the Kleen Plant on February 7, 2010 and the resulting damage.

## COUNT SIXTEEN:  STRICT LIABILITY
## PLAINTIFFS V. SIEMENS AG

91.     Plaintiffs incorporate by reference Paragraphs 1-90 the same as if they were set forth herein.

92.     Gas blows utilizing natural gas at the Kleen Plant constituted an ultra-hazardous activity for the following reasons:

a.      There is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas;

b.      Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) resulted in deaths, injuries and substantial property damage;

c.      The likelihood that death, serious personal injury, or significant property damage can result when natural gas is used for a gas blow is great (the instant incident being a prime example);

d.      The risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can self-ignite by static electricity by expelled metal debris sparking against nearby structures; or by other construction activities in the vicinity;

e.      There are commonly used (and far less dangerous) methods to clean gas piping other than natural gas, including "pigging", air, nitrogen, chemical/water and steam;

f.      The use of natural gas at the Kleen Energy plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas; and

g.      The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community.  Property beyond the confines of the Kleen Energy site was damaged by the explosion of February 7, 2010.

93.     The work performed by Defendant Siemens AG relating to the gas blow process at the Kleen Plant involved an ultra-hazardous activity as set forth herein so that it is strictly liable for the damages caused by the explosion of February 7, 2010.

## COUNT SEVENTEEN: NEGLIGENCE
## PLAINTIFFS V. SPECTRA

94.     Plaintiffs incorporate by reference Paragraphs 1-93 the same as if they were set forth herein.

95.     Defendant Spectra's subsidiary Algonquin entered into a Service Agreement with Kleen to transport natural gas to Kleen through Algonquin's "Kleen Energy Lateral" and meter station including, natural gas to be used for gas blows.  Furthermore, Defendant Spectra became very involved by way of its own employees in the gas blow process.

96.     Defendant Spectra had a duty not to permit its subsidiary's equipment including its metering station to be used for purposes which would endanger life or Kleen's property and to warn Kleen that use of natural gas for gas blows was inherently dangerous and likely to result in damage to its property.  Spectra negligently breached its duties to Kleen as follows:

> a.      It permitted its subsidiary's gas piping and metering station to transport natural gas to Kleen for a purpose which it knew or should have known was inherently dangerous;
>
> b.      It failed to warn Kleen that use of natural gas which it transported to Kleen for the purpose of performing gas blows was inherently dangerous and likely to result in damage to Kleen's property;
>
> c.      It failed to warn Kleen of various precautions which were needed to reduce the hazards of using natural gas for gas blows;
>
> d.      It failed to warn Kleen that minimal volumes of natural gas and pressure should be used when natural gas is used as a pipe cleaning agent; and
>
> e.      It permitted the delivery of natural gas to Kleen by way of its subsidiary for the purpose of gas blows, with excessive volumes and pressures resulting in extremely hazardous volumes of natural gas to accumulate and explode during the gas blow process.

97.     The acts and omissions described herein were proximate causes of the explosion at the Kleen Plant on February 7, 2010 and the resulting damage.

## COUNT EIGHTEEN:  RECKLESS, WANTON AND/OR WILLFUL CONDUCT
## PLAINTIFFS V. SPECTRA

98.     Plaintiffs incorporate by reference Paragraphs 1-97 the same as if they were set

forth herein.

99.     Defendant Spectra was under a duty to exercise a high degree of care with respect

to its involvement with the ultra-hazardous gas blow process.  Defendant Spectra recklessly,

wantonly and/or willfully breached those duties as follows:

  a.    In permitting the use of its subsidiary's gas piping and metering station to
        supply natural gas for gas blows at the Kleen Plant which it knew were
        inherently dangerous and could result in ignition and explosion of a
        natural gas causing death, injuries and property damage;

  b.    In failing to offer or recommend the use of its own protocol for gas blows
        when it knew that the design and implementation of the gas blow process
        at the Kleen Plant was extremely flawed and likely to result in an ignition
        and explosion of natural gas;

  c.    In participating in developing a protocol for gas blows at the Kleen Plant
        which expelled excessive volumes of natural gas into a confined area
        where it collected with several ignition sources present resulting in an
        explosion causing death, injuries and property damage;

  d.    In permitting excessive amounts and pressures of natural gas for gas blows
        at the Kleen Plant to flow through its pipes and metering station when it
        knew that such volumes of natural gas were likely to collect, be ignited
        and explode causing death, injury and property damage;

  e.    In ignoring the inexperience of other parties involved in the protocol,
        safety and implementation of the inherently dangerous gas blow process at
        Kleen Energy knowing that the cleaning contractors' inexperience was
        likely to result in the ignition and explosion of the natural gas used during
        the gas blow process causing death, injury and property damage;

  f.    In opening the valve at its subsidiary's metering station permitting natural
        gas to flow into the Kleen Plant for gas blows when it knew or should
        have known that the Kleen gas blow protocol and implementation was
        extremely flawed and likely to result in the ignition and explosion of
        natural gas causing death, injuries and property damage; and

g.    In permitting its subsidiary's piping system and metering house to transport natural gas to the Kleen Plant for gas blows which it knew or should have known was an inherently dangerous use of natural gas likely to result in death, injuries and property damage.

100.    The reckless, wanton and/or willful acts and/or omissions described herein were proximate causes of the explosion at the Kleen Plant on February 7, 2010 and the resulting damage.

<u>**COUNT NINETEEN:  STRICT LIABILITY**</u>
<u>**PLAINTIFFS V. SPECTRA**</u>

101.    Plaintiffs incorporate by reference Paragraphs 1-100 the same as if they were set forth herein.

102.    Gas blows utilizing natural gas at the Kleen Plant constituted an ultra-hazardous activity for the following reasons:

a.    There is a high degree of risk of harm to persons and property by explosion and fire when natural gas either intentionally or unintentionally is introduced into the atmosphere outside pipes or vessels which are intended to contain the natural gas;

b.    Prior to February 7, 2010, there were other reported incidents in the United States where the use of natural gas to clean pipes (gas blows) resulted in deaths, injuries and substantial property damage;

c.    The likelihood that death, serious personal injury, or significant property damage can result when natural gas is used for a gas blow is great (the instant incident being a prime example);

d.    The risk of ignition of natural gas used as a cleaning agent during gas blows cannot be eliminated by the exercise of reasonable care because the natural gas used during gas blows can self-ignite by static electricity by expelled metal debris sparking against nearby structures; or by other construction activities in the vicinity;

e.    There are commonly used (and far less dangerous) methods to clean gas piping other than natural gas including "pigging", air, nitrogen, chemical/water and steam;

     f.      The use of natural gas at the Kleen Energy plant was inappropriate because a high volume of natural gas was vented into an area where it could accumulate to explosive levels, where workers were located and where numerous ignition sources were present and able to ignite the natural gas; and

     g.      The gas blow process had no value to the community and its dangerous attributes clearly outweighed its value, if any, to the community.  Property beyond the confines of the Kleen Energy site was damaged by the explosion of February 7, 2010.

103.    The work performed by Defendant Spectra relating to the gas blow process at the Kleen Plant involved an ultra-hazardous activity as set forth herein so that it is strictly liable for the damages caused by the explosion of February 7, 2010.

WHEREFORE, on each and every one of the nineteen (19) aforementioned counts of this Third Amended Complaint, the Plaintiffs demand:

     a)      Money damages;

     b)      Costs; and

     c)      Such other relief as the Court deems appropriate.

## <u>RELIANCE UPON PREVIOUS DEMAND FOR JURY TRIAL</u>

Plaintiffs, by and through their attorneys, hereby rely upon their previous demand for a trial by jury in the above-captioned case.

Respectfully submitted,

THE PLAINTIFFS,

Dated:  December 20, 2011      By:    <u>/s/ Charles R. Tuffley</u>
Charles R. Tuffley (admitted PHV)
Alyssa J. Endelman (admitted PHV)
DENENBERG TUFFLEY, PLLC
28411 Northwestern Highway, Suite 600
Southfield, MI  48034
PH - (248) 549-3900, FX - (248) 593-5808
ctuffley@dt-law.com
aendelman@dt-law.com

-and-

Stuart G. Blackburn (Juris No. 413638)
LAW OFFICES OF STUART G. BLACKBURN
Two Concorde Way, P.O. Box 608
Windsor Locks, CT  06096
PH - (860) 292-1116
FX - (860) 292-1221
sgblackburn@sgblackburn.com

Attorneys for Plaintiffs Ace American
Insurance Company, et. al.

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2011, a copy of the foregoing was filed electronically using the CM/ECF system and served by U.S. Mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system which will automatically send e-mail notification of such filing to all counsel of record, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

By:   /s/ Charles R. Tuffley
      Charles R. Tuffley (Bar No. phv04905)
      Denenberg Tuffley, PLLC
      28411 Northwestern Highway, Suite 600
      Southfield, MI  48034
      (248) 549-3900; (248) 593-5808 (fax)
      ctuffley@dt-law.com